NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BADIH RAZZOUK,<br><br>               Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>               Respondent. | No.   19-71852<br><br>Agency No. A216-626-703<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 15, 2021**
San Francisco, California

Before: THOMAS, Chief Judge, and R. NELSON and HUNSAKER, Circuit Judges.

Badih Razzouk, a native and citizen of Syria, petitions for review of the Board

of Immigration Appeals' ("BIA") denial of his application for asylum and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

withholding of removal.  We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

The BIA properly rejected Razzouk's claim of well-founded fear of persecution on account of his religion because substantial evidence supports that there was no pattern or practice of persecution by Islamic terrorist organizations against Christians.[1]  The record does not compel the conclusion that the violence by Islamic extremists against Christians was "sufficiently widespread" or "systematic" in Syria.  *See Wakkary v. Holder*, 558 F.3d 1049, 1061 (9th Cir. 2009) (citation omitted).  According to the U.S. Department of State ("State Department"), ISIS's atrocities were endured by Christians residing "in areas it control[led]."  In 2017, ISIS control was limited to northeastern Syria, near Iraq, in three out of Syria's fourteen governorates.  Areas of Syria—such as Mashta El Helo in Tartus—were predominately Christian and under the control of the Syrian government in 2017 and 2018.  According to the State Department, "leaders from a number of minority religious groups, such as representatives of the Catholic and Orthodox Christian

---

[1] Razzouk also argues that he has well-founded fear of persecution because Christians are a "disfavored group."  We note that "disfavored group analysis is an evidentiary concept that applies when a petitioner attempts to show that []he will be individually singled out for persecution."  *Tampubolon v. Holder*, 610 F.3d 1056, 1062 (9th Cir. 2010); *see also* 8 C.F.R. § 1208.13(b)(2)(iii)(A).  Because Razzouk failed to argue that he faces an individualized risk of persecution before the BIA, we lack jurisdiction to review his eligibility for relief under the disfavored group analysis.  *See* 8 U.S.C. § 1252(d)(1).

communities" view the Syrian government as "their protector against violent Sunni extremists." Evidence also shows that the violence against Christians is not sufficiently systematic; rather, the State Department has described most of the violence in Syria as "indiscriminate," affecting large portions of the population, not just Christians.[2] *See Wakkary*, 558 F.3d at 1061.

The BIA also properly concluded that Razzouk failed to establish a well-founded fear of persecution based on his membership in the proposed particular social group of "young Syrian males who would be subject to military recruitment and who take physical action to avoid military service." "[F]orced conscription or punishment for evasion of military duty generally does not constitute persecution," unless the petitioner establishes that he faces a "serious or disproportionate punishment for refusing to serve in the military" on account of a protected ground, *Zahatye v. Gonzales*, 453 F.3d 1182, 1187 (9th Cir. 2006) (citations omitted), or "where the [petitioner] would be required to engage in inhuman conduct were he to continue serving in the military," *Ramos-Vasquez v. INS*, 57 F.3d 857, 863 (9th Cir. 1995) (citations omitted). Substantial evidence supports that the Syrian government

---

[2] Further, the BIA did not necessarily require Razzouk to prove individualized harm when it mentioned that Razzouk's Christian family members remain unharmed in Syria. Even if harm to Razzouk's family was inapplicable to the pattern or practice analysis, there is still sufficient substantial evidence overall to show a lack of pattern or practice of persecution of Christians in Syria.

does not inflict a disproportionately severe punishment on military service evaders, as opposed to deserters, based on any protected ground. *See Zahatye*, 453 F.3d at 1187–88. No country documents show the government punishes military service evaders of certain religions or imputed political opinions more harshly than other evaders. Razzouk also failed to show that the Syrian military would require him to engage in inhuman conduct, as evidence supports that military conscripts are more likely to be assigned to administrative and guard functions as opposed to the armed forces in offensive operations. *See Ramos-Vasquez*, 57 F.3d at 864. And no country documents show the military places conscripts on the front lines of battle on account of religion or evasion of military service.

Moreover, substantial evidence supports the BIA's determination that Razzouk's evasion of military service does not by itself qualify as political opinion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481–82 (1992). Even if, as Razzouk argues, the government would impute a political opinion onto him solely from his evasion of military service, there is no explanation or evidence as to how that would differ from the way the government views every other military evader or why Razzouk would be subject to different treatment or punishment than other military evaders.

Because Razzouk failed to meet the "well-founded fear" standard for asylum, he necessarily failed to meet the "clear probability" standard for withholding of

removal.[3]  *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430–32 (1987).  Thus, Razzouk's applications for asylum and withholding of removal were properly denied.

**PETITION DENIED.**

---

[3] According to Razzouk, the BIA erred by not considering his eligibility for withholding of removal.  We disagree.  The BIA properly evaluated Razzouk's claim for withholding under the "clear probability of persecution" standard.  *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430–32 (1987).